And will Council on Parkway Bank please approach and tell us who you are and who you represent. Good morning, Your Honor. I'm Gary Pringer and I represent the Planned Parenthood Foundation. Good morning, Brian Sanchez. I represent the Appalachian People's Gas Light and Coke Co. Okay, and Mr. Klinger, how much time do you want? Your Honor, I think seven minutes, seven to ten minutes would be sufficient. Okay, seven to ten. We'll give you a window and we'll give you a couple minutes for rebuttal. That would be great. All right, and Mr. Sanchez? Ten minutes. Ten minutes, okay. All right, and Mr. Klinger, would you like to proceed? Yes, Your Honor. Okay. And I'll tell you, as you know, we've read everything, so we're very familiar with your case. Okay, thank you very much. I appreciate you putting in the time to do that. Good morning. At its essence, Your Honor, this case is about whether utility companies, such as People's Gas, enjoy a general tort immunity. The question is a question, really, of jurisdiction of the commission, which is a different question. I mean, the fact is we don't write the laws. We have to follow the laws, and that's what courts do. So isn't the real question, I mean, we might, on a public policy, whether we agree with you or not is not the issue. But isn't the issue whether the commission's jurisdiction includes claims like this? Yes, that is right. And I think those two kind of concepts are intertwined here because in the commission, as you know, you can only recover for excessive rates charged, not property damage. And if you can't recover property damage in certain courts because they're barred by the commission, and you can't recover them in the commission, then essentially it is a tort immunity. Plaintiff alleges here that People's Gas caused plaintiff to incur hundreds of thousands of dollars, if not millions of dollars in damages because of defective gas lines. It operated during one of the coldest winters on record. But what you said was that People's Gas failed to maintain their service. Is that correct? That's in your complaint. I'm reading from your complaint. It says you failed to maintain service. The gas lines at issue were outside of the building. But you're talking about service, though, right? You have it in your complaint. It failed to maintain service, operate, and or repair the gas lines. Is that correct? That is correct. And that led to an infrastructure becoming decayed and degraded? The infrastructure became? That is correct. And that's part of your claim? That is correct. Okay. Then how do you distinguish that from the Illinois Supreme Court case in Scheffler, which specifically said that a relief sought by a plaintiff goes directly to ComEd's service and infrastructure, which is within the commission's original jurisdiction? But I think in – and the way I distinguish that is in Scheffler, the Illinois Supreme Court also said jurisdiction is determined by, quote, solely by, quote, the nature of the relief sought. And in Scheffler they were trying to recover – the relief, Your Honor – wanting to be put in priority for people who had medical issues in case their service went out. Well, that's a claim that clearly goes to service. And they were also seeking the monetary damages they lost while their service was out. In other words, what they paid to the commission – what they paid to the utility company for while not having service. Here we're not seeking for the rates that we were charged. We're seeking relief for the property damage that was caused. But they – your claim that property damage was caused by people's gas failure to maintain its infrastructure, right, is part of the equation that the commission considers in setting rates. In other words, one of the issues the commission considers is how much should we require the utility to invest in its infrastructure so that the service it provides to customers is reliable. So tell me why that isn't within the commission's jurisdiction. Well, I think there's one fact that puts it outside the purview of the commission, and that's that we allege that people's gas was aware of its – and had both actual and constructive knowledge of its defective gas lines. You notified the gas – Parkway notified the gas company. On multiple occasions. And the gas company said, oh, there's no problem with the service. There's no problem with our gas. They came out on two times and said, no, no, there's not an issue with the service. And, you know, this is going on while – So they came out a couple times? Yes. During the vortex? Yeah. Correct, Your Honor. But each time they came out, they denied there was any problem. That's right. And then your client relied on that. They did rely on that. And, you know, that being both actual knowledge and constructive knowledge, as in the media was well documented, look, they're having issues with their gas lines all over the place. So we allege that they had both actual and constructive knowledge of these issues. They came out both times, said, no, no, not our fault. And we put them on notice. And then, poof, the gas lines go out. Our water pipelines freeze and then burst and then cause damage. This is a large, large commercial building we're talking about here. Many, many times, at least ten floors. The building is out of power, flooding for days, if not weeks. And then mere days after that incident occurred, what do you know? People's gas is outside of the building fixing their gas lines. And those are, as you may have seen in the complaint, we took pictures of that and documented that. And after the fact, you know, it was our issue, they just, you know, just go on and carry on with our business. Would you say that your claim had to do with the adequacy of the gas company's services? I think that's part of the claim. I also think that, you know, we put them on notice of an issue with their services. Well, and the issue you put them on notice of is the adequacy of their service. Would you agree? You're saying it was inadequate. I would agree to that to an extent. We did put them on notice that their service was defective and breaking down. But, and I understand that where you're getting with that is, you know, that lies with the commission. But if you look at, I have trouble reconciling those facts with the facts in Adams versus Northern Illinois Gas Company where, same issue, defective gas lines. They allege that they had notice. They told them. And then there was an explosion and the plaintiff was hurt there. And there the defendant argued the same thing. While this is clearly, you know, you're complaining about inadequate gas here, gas services, this clearly lies with the commission. And there the Illinois Supreme Court held, and I'll quote, we conclude that the commission did not intend to completely immunize the defendant with respect to a gas leak of which it has notice. It must be remembered, public utilities do not enjoy a general tort immunity. They owe a duty of care to the general public. If a utility company recognizes that its conduct under certain circumstances creates an unreasonable risk of harm to another, it has a duty to take reasonable precautions to prevent that risk of harm from occurring. So how is, in your instance, people's gas failure to maintain its infrastructure different for your client than it is for the rest of the citizens of its service district? I think in this instance is that my client contacted them on multiple occasions, told them that there is a risk here. They said the gas is not coming in. The lights are flickering. People are without heat. Called them out again. Told them the same things. Gas company comes out. Not our problem. Not our issue. Then days later, after having notice of this risk of harm, gas lines fail. Building floods is destroyed. Businesses are destroyed. Days later they go out and fix it. My client's position is that they were on notice of this. They had a duty to do something about it, and they didn't. Where is the case or where in the act does it say the notice changes the viability that the company might have? In response to that, my reading of Adams says that they owe a duty. That is a case that I think. Well, that had to do with an explosion. I mean, this is infrastructure. There's a big difference between an explosion, it sounds like it's an individual situation that occurred where somebody was injured. This was a, throughout your complaint, you're saying it isn't just, it's the gas lines to this area, so it's infrastructure, which is a whole different ballgame when it talks about infrastructure and service, maintaining service and so forth. I think where I come down on that is that it's not so much the nature of the defect as it is with having notice of the defect. And that's my reading of Adams. And they're talking about a gas leak. I mean, these facts, I feel like, are quite similar to the facts of this case. So any time there's a frozen pipe, people's gas is responsible if there's damage? No. Okay. Stop that. So you don't agree with that general proposition? I don't agree with that general proposition. Would you agree that it only applies where somebody puts them on notice? I think so, Your Honor. And when there's a prominent harm, a reasonable, foreseeable risk that something's going to happen from this. And that's just coming right out of what I feel is what the Illinois Supreme Court said in Adams. So you're differentiating my first hypothetical. The second has to do with Adams. Correct, Your Honor. So putting them on notice, you're saying that there's a defect in their system, they're on notice. They came out and looked at it, not once but twice, gave your plaintiffs bad information or incorrect information. Your plaintiffs relied on it and that that makes it willful and that that takes it out of the willful is what takes it out of the commission's jurisdiction. I think so. But even compounding that is where I'm getting there with the willful aspect is that they didn't even look at it. They came out and just said, no, it's not our issue. They just let it be. So they misrepresented it. Yeah. We put them on notice of it and they didn't do anything about it. Days later they're fixing the problem and don't say anything and now argue, oh, this belongs in the commission. You can only recover for the money you paid for our services while you were out. I can't believe that the legislature contemplated that kind of result for a general tort immunity for these utilities. And I think that the Adams case carves out an exception in those circumstances and that's why I feel that at least at this stage of the litigation, these allegations have been plausibly pled to meet that kind of exception. All right. Anything else for Mr. Klinger? All right. Thank you. Is it your position that People's Gas is asking for tort immunity? What I'm saying, I don't think that People's Gas is asking for tort immunity. I think that that will be the result if claims like this are kept out of the circuit courts. And I think that, as I mentioned, what the Illinois Supreme Court says in Adams is that, I'll quote it again, public utilities do not enjoy a general tort immunity. They owe duty of care to the general public. Thank you. Thank you, Mr. Klinger. Mr. Sanchez? Good morning. May it please the Court, Counsel. As I stated, my name is Brian Sanchez. I represent the People's Gas Light and Coke Company. We are asking this Court to affirm the circuit court's dismissal of plaintiff's complaint for lack of jurisdiction. It's our position that this case is controlled by Section 9-252 of the Public Utilities Act and the Illinois Supreme Court's holding in Sheffler. The plaintiff rests their case, to me it sounds, mostly on the Adams case. So why do you discuss, why shouldn't we follow Adams? Sure. Adams is not a service interruption case, which is what we're dealing with here. Adams is a gas explosion case and the duty to warn of a known hazard that could cause a gas explosion. It is not a case about the failure of the gas company to provide gas service, gas through the pipes, which is what we're dealing with here. This is a service interruption case. And I think that is the big distinguishing factor with Adams. And the reason, because the tariff provision at issue in Adams was the equipment and maintenance of the customer's gas pipes and equipment. Connector. What's that? Wasn't it a connector that failed? Yes, it was a brazed connector that was part of the consumer's gas equipment. And the tariff provision at issue addressed that customer's equipment and said basically there is no general duty to inspect or warn of anything regarding the customer's equipment. And what the court found in Adams was that there is an exception to that rule and the exception being that there is a duty to warn when the gas company knows of a hazard that could cause a gas explosion. And in that case, they knew that when the sulfides came into contact with the brazed connector, corrosion would occur, which would result in a gas leak, which when it comes into contact with an ignition source, there could be an explosion. And so the gas company had a duty to warn in that case. What about in this case? Did they have a duty to warn? So in this case, first of all, we're not dealing with a duty to warn of a gas explosion. No, but a duty to warn that the pipes might freeze. I mean, they called out twice and said it's really cold. It looks like our gas is being interrupted or something is going on. Sure. There is no statutory authority that I'm aware of that requires the gas company to warn of a service interruption. No statutory authority, no case law authority for that proposition. There is no duty to warn of a service interruption, and I think you can see why that is. If there was a duty to warn of a service interruption, that duty would absolutely implicate rates, which would then put it right back in the commission's jurisdiction. And the reason is because if a gas company needs to go out and warn everyone that, oh, you know, you might have an outage in a polar vortex like is alleged in Plano's complaint, the cost of doing that, that's going to be something that the commission is going to have to look at because the next question is, how does or can a utility such as People's Gas recover for the cost of doing that? And that then brings in the issue of rates, and we're in the commission. Okay, wait a minute. Send out a bill every month. There's flyers and stuff that can go in those bills that say, hey, if we're in the middle of really bad winter and the temperature goes below blah, blah, blah, be alert. Here are some things you should look for, and here are some steps you can take. I don't see how that's an added cost. You send out bills every month. Anyhow, my question is, this case does not involve something that the consumer, some equipment of the consumers. This case only involves equipment of People's Gas. People's Gas was called out. They came out twice. They were aware that there was a problem. Then they lied about it, and on top of lying about it, they didn't do anything about it, and then things went crazy in the building. So how is that not an omission that's willful? We're obviously at the pleading stage, and for the motion, we accept it's true, the allegation, so I recognize that. I'm having a hard time answering your question. Well, I'll rephrase it. So when you went out the two times that you went out, I'm assuming that the inspectors, the staff people that went out, if there was something wrong with the system, recognized it, or else they wouldn't be on your staff. That's fair? Sure. So when they saw there was something wrong with it, why isn't omitting to fix it then willful? There is no... I'm still struggling to answer the question because willful or not willful, negligent or otherwise... Well, the statute talks about omission after omission was willful. Are you referring to... That provides for civil damages. Correct. And whether it's willful or not, we're still talking about the adequacy of the service. Your guys are standing there and looking at something and saying, ah, this isn't right, and then they not only walk away from it, they not only cover it back up again, they walk away from it, and they tell the client nothing's wrong. And if there's a remedy for that, it's in the commission. Whether that's willful or not, if there's a remedy for it, it's in the commission. And the reason it's in the commission is because it goes to the continuous service of the gas provided by People's Gas. Well, sure, unless they're on notice that, hey, there's a problem here. We're experiencing a problem with our building. Say it was in the middle of the summer. Easy weather, nice day. Not a blizzard, not a polar vortex. And a building calls up and says, hey, there's something wrong going on here. We don't know what it is. The lights are flickering. Nobody's got any heat. You know, it's not too hot outside. We saw some people using heat. People are having a little trouble using their hot water heaters because their gas hot water heaters, blah, blah, blah. And you come out and say, you dig up the street, you open it up, you look at it. Oh, yeah, this isn't working right. And then you cover it up and walk away. So we'll take the polar vortex out of it. Sure. We'll just talk about the service interruption. Is that a service interruption that's a normal service interruption, or is that a service interruption that you knew about that you willfully omitted to fix? Again, I think whether it's known about or not, it's a service interruption that belongs before the commission. I don't think that there's a distinction that gets made between willful or not willful when we're talking about Section 9-252 of the Public Utilities Act. When we're talking about Scheffler, there were allegations that ComEd should have warned about its equipment not being able to withstand a severe storm that would cause a power outage. Those allegations of the failure to warn the customers that ComEd knew that their equipment couldn't withstand that severe storm were rejected. Is that because everybody who lives in Chicago knows that when it's 105 outside at 5 o'clock, everybody turns on their air conditioners and there's going to be some problems with service? You just expect consumers to understand that there are going to be problems if there are bad weather? Do you have some obligation when you actually see a problem? You've been on the street. You've been there. You've looked at your equipment. Clearly something was wrong with it because you came right back out and fixed it, so now you know that there's something wrong with it. You're not hoping that there isn't something wrong with it. You know that there is something wrong with it. How is that not a willful omission? Or at least, at the very least, to say, look, we can't get at this right now. It's too cold. But building, here are some things that you can do to protect yourself. Right. And, again, whether it's willful or not, it's our position that that claim, that People's Gas willfully failed to repair its infrastructure, belongs before the commission. So that's the best way that I can answer it. I understand that part, but that doesn't answer the question that I think that Jessica is asking because here they came out and they said nothing's wrong. And they came out and said nothing's wrong. Well, there was something wrong. So it's okay for Commonwealth Edison, is what you're saying, that there would still be reparations if they came out and gave, and they messed up. On this case, we're not talking about everybody else. We're only talking about this case. It's not a class action. It's just an individual case where somebody said they were on top of it. They said, we've got a problem here. And Commonwealth says, oh, we'll be right out. Oh, it's fine. Well, call again. We have a problem here. They come out. That's pretty frustrating. You know, they came out twice. They said everything's fine. And then, of course, what happened is what they were worried about, somebody at Commonwealth Edison screwed up. Now, why should that go to the commission? We're just talking about this individual's connection to the service. It should go to the commission because it goes to the adequacy of the utilities service. But it was inadequacy of the people who came out. I mean, it's different. What makes this case different is the fact somebody came out. If you didn't have that, it would be very similar to some other cases. Somebody came out, and they gave bad information. And Commonwealth Edison says, oh, whatever happened, we're not responsible. It's services and infrastructure because that's what caused it. But they put you on notice. You didn't warn them at all and say they could freeze. It might be freezing. Here's what you need to do. You gave no feedback at all, apparently, according to the complaint. So why is that something that should be compensated by damages? There's a remedy, but the regulatory system that's been created in the state of Illinois in the Public Utilities Act and the creation of the commission limits that remedy. And so, you know, whether the utility is put on notice of a problem with its infrastructure or not, the remedy for the consequences of a disruption in service belong in the commission. And it is. I do recognize that there's a limitation of liability here. And I think that's included in the tariff, right? That is included in the tariff. And I think that the Illinois Supreme Court recognized that in Scheffler, that there is a limitation of liability going on here. And the reason for that is that utilities are regulated monopolies. Right. So, Scheffler also recognized that there are civil actions, that there are torts when the actions are willful omissions. And so I go back to my basic question. You know about this. You see it. Your guys are there. You not only don't tell the people, oh, yeah, there's a problem. We're going to fix it now. You don't tell them, yeah, there's a problem. Here's how you can help moderate what bad things could happen and just go on your merry way. So. Again, and I just fall back on that there were arguments that combat knew and failed to warn, which would be just as willful. And those claims were rejected in Scheffler. All right. Mr. Sanchez, thank you. Thank you. And Mr. Klinger, briefly. Thank you. I just have a very, very brief closing. As I've mentioned before here, it is Plaintiff's position that the onus of Supreme Court's opinion in Adams recognizes an exception in these circumstances. When there is what Plaintiff believes the facts support allegations of willful and wanton conduct and when the defendant has clearly been put on notice of a potential harm. Your allegation, as I understand your theory, it's that people's gas system-wide infrastructure was defective and people's gas knew it. And so the fact that your client's pipes froze and there was damage to the building is really the risk of a defective infrastructure area-wide, right? In a sense, yes. But what goes more to my claims is the fact that we had put them on notice of this harm, actual notice, and brought them out twice. And so we believe that there is an exception recognized in the Adams case for those circumstances. But even leaving aside the negligence claim, I'd like to just close out with what I believe are adequately pled consumer and common law fraud claims. We believe the elements have been adequately pleaded and those claims go to not challenging the adequacy of the service and the infrastructure. Those claims challenge what we believe is misconduct on the part of the people's gas employees who come out there and don't do a sufficient job in investigating whether the complaints are real. How many people do you think in people's gas service area call people's gas and say, I'm having a problem and a service person comes out and says, I don't find anything. I don't find anything. And so under your theory, say they come out twice and say, I don't find anything. Then the utility is liable for whatever happens. So they're the insurer of the quality of their service. I think as defense counsel pointed out, they do, in exchange for that, they do enjoy a monopoly of services over the consumers. They enjoy a monopoly that is regulated heavily by the commission. That is, they're not free to go out and earn X interest rates or pay their executives, you know, it's all regulated by the commission. It's not free market. That's true, Your Honor. But part of that regulation includes maintaining adequate infrastructure. That is correct. Which if they were having a problem on North Milwaukee Avenue at Gale Street and the surrounding area, that would indicate that there was not adequate infrastructure. So somewhere along the line, someone just made the decision, oh, we can put off repairing those lines for a while. We'll just do something else with our money. Yeah, and I think that that's what happened here, as was documented, you know, in the media articles that they weren't prepared for something like this. But, you know, the gist of our complaint is that we told you guys twice, and they did come out twice, but they also told us affirmatively, it's not our issue. It's yours, as we allege in the complaint. But the issue is the repair. What should they have done? I think, as Your Honor pointed out correctly, is that they should have given them, you know, beyond notice, put some prophylactic measures, which the building would have taken. You know, if it is our issue, it may be our issue, turn off your water. You know, some kind of prophylactic measures, you know. This is a commercial building, and you've got a building manager? I'm sorry, Your Honor? This is a commercial building, right? This is a commercial building. You've got a building manager. There is a building manager. I believe. I shouldn't say that. I would assume so. So you didn't want to repair anything at that time? They should have repaired it. It was no advice? Is that the duty to warn? I think recognizing the extreme circumstances of the winter and being called out twice and saying this building isn't getting heat and then denying, you know, this isn't our issue, not even looking at it. So that's a duty to warn? I think it's either a duty to warn. I think there's more. I'm leaving aside the duty to warn so much as an omission of a material factor. But they had a duty to omit. I mean, you claim a duty to warn in your complaint. In the negligence. Right. In the negligence claim. I was more focusing on the consumer and common law fraud claims where they relied in the course of their business on what these employees were telling them. And then to their detriment, the building sustained substantial damages. Days later, they didn't come by to remedy what was clearly their fault. They'd just been out two days earlier. They just tried to repair it and go on with their business. And I have to think that that type of conduct, you know, there is a claim for relief in the courts. And that's how I will conclude. All right. Thank you. Thank you. Thank you, Mr. Clarence. Mr. Santos, thank you for your arguments here this morning, your briefs, and we will take the matter under advisement.